No. _____

===============================================================

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

————————————

IN RE OLD REPUBLIC INSURANCE COMPANY,

*Petitioner.*

————————————

On Petition for Writ of Mandamus to the United States District Court for the
Western District of North Carolina,
No. 3:10-cv-00553-GCM (Hon. Graham C. Mullen)

————————————

## PETITION FOR WRIT OF MANDAMUS

————————————

MICHAEL R. HASSAN
ALBERT E. FOWERBAUGH, JR.
CATHERINE E. ISELY
BUTLER RUBIN
  SALTARELLI & BOYD LLP
70 W. Madison Street
Suite 1800
Chicago, IL 60602
(312) 444-9660

PAUL D. CLEMENT
GEORGE W. HICKS, JR.
MICHAEL H. MCGINLEY
BANCROFT PLLC
1919 M Street NW
Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com

*Counsel for Petitioner Old Republic Insurance Company*

May 5, 2014

===============================================================

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 4th Cir. R. 21(b), Fed. R. App. P. 26.1, and 4th Cir. R. 26.1, Petitioner Old Republic Insurance Company hereby states that it is a wholly owned subsidiary whose ultimate parent company is Old Republic International Corporation, a publicly owned corporation. No other corporation has a direct financial interest in the outcome of this litigation.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......................................... i

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION ............................................................................... 1

ISSUE PRESENTED .......................................................................... 3

JURISDICTION.................................................................................. 4

STATEMENT OF FACTS .................................................................... 5

    A.    BANA's Complaint and the Bellwether Trial Plan ............................. 5

    B.    Summary Judgment Proceedings and the "Administrative Orders" ............................................................. 8

    C.    The Case Management Order........................................................... 12

REASONS FOR ISSUING THE WRIT .................................................. 15

I.    The District Court's Trial Plan Violates The Seventh Amendment.............. 15

    A.    The Seventh Amendment Bars Reexamination of the Same Issue by Different Juries.................................................... 17

    B.    The District Court's Trial Plan Contemplates Examination of the Same Coverage Issues by Different Juries, Violating the Seventh Amendment. ....................................................... 20

    C.    The Case Management Order Is the Culmination of Multiple Orders that Sacrifice Old Republic's Rights. .................................... 27

CONCLUSION .................................................................................. 30

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978)................................18

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ..................... 19, 23

*Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 (1959) ..........................................4

*Blis Day Spa, LLC v. Hartford Ins. Grp.*,
    427 F. Supp. 2d 621 (W.D.N.C. 2006)..................................................................24

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999).....................................................19

*Brantley v. Safeco Ins. Co. of Am.*,
    2011 WL 6012554 (W.D. Ky. Dec. 1, 2011)........................................................26

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996).......................... 17, 19, 23

*Cleveland Const., Inc. v. Fireman's Fund Ins. Co.*,
    819 F. Supp. 2d 477 (W.D.N.C. 2011)........................................................... 22, 24

*CSX Transportation, Inc. v. Gilkison*,
    2012 WL 3283411 (N.D. W. Va. Aug. 10, 2012)................................................26

*Dairy Queen, Inc. v. Wood,* 369 U.S. 469 (1962) ......................................................4

*Ferrell v. Brooks*, 2006 WL 1867267 (N.D. W. Va. Jun. 30, 2006).......................26

*Filmon Process Corp. v. Sirica*, 379 F.2d 449 (D.C. Cir. 1967)................................5

*Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931)......... *passim*

*Gen. Tire & Rubber Co. v. Watkins,* 331 F.2d 192 (4th Cir. 1964) ............................4

*In re Lockheed Martin Corp.*, 503 F.3d 351 (4th Cir. 2007)............................... 4, 27

*In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444 (3d Cir. 1997)...............................20

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)...................... *passim*

*In re Vorpahl,* 695 F.2d 318 (8th Cir. 1982)..............................................................4

*INS v. Chadha*, 462 U.S. 919 (1983).........................................................................3

*Lovell v. Nationwide Mut. Ins. Co.*,
 424 S.E.2d 181 (N.C. Ct. App. 1993) ................................................22

*Michael v. Metro. Life Ins. Co.*, 631 F. Supp. 451 (W.D.N.C. 1986) ......................24

*O'Malley v. U.S. Fidelity and Guar. Co.*, 776 F.2d 494 (5th Cir. 1985) .................26

*Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) ...........................................19

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) ................................................................3

*United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961) ..............................20

*United States v. Moussaoui*, 333 F.3d 509 (4th Cir. 2003) ........................................4

*Wilmington Trust v. U.S. Dist. Ct. for the Dist. of Haw.*,
 934 F.2d 1026 (9th Cir. 1991) ...........................................................5

## Constitutional Provision

U.S. Const. amend. VII ...........................................................................17

## Statutes & Rule

28 U.S.C. § 1292(b) ..................................................................................5

28 U.S.C. § 1651 .......................................................................................4

Fed. R. Civ. P. 42(b) ...............................................................................18

## Other Authorities

9A Wright & Miller,
 Federal Practice and Procedure (3d ed. 2014) ............................ 20, 24

16 Wright & Miller,
 Federal Practice and Procedure (3d ed. 2014) ..............................5

# INTRODUCTION

Petitioner Old Republic Insurance Company seeks a writ of mandamus to protect its Seventh Amendment rights following an unconstitutional case management order issued by the district court.  That order provides for separate juries considering overlapping issues of liability and bad faith, in which the second jury will necessarily reexamine the findings of the first jury in violation of the Seventh Amendment.  Indeed, the order envisons that this Seventh Amendment violation will recur more than a thousand times, as the district court envisions trying well over one thousand separate coverage disputes before the first jury and then retrying those same disputes to a second jury to determine whether the coverage denials were in bad faith.  Preventing Seventh Amendment violations is a traditional office of the writ of mandamus, and the repeated violations envisioned by the order below make mandamus relief imperative.

Like much litigation against Bank of America, N.A. (BANA), this case arises out of the mortgage financing and housing debacles.  But unlike the vast majority of that litigation, this is a lawsuit by—not against—BANA in an effort to shift the financial responsibility for defaulted loans that BANA underwrote to Old Republic.  Old Republic agreed to insure BANA against losses in the event of payment default by borrowers, but only for loans evidenced by notes meeting certain eligibility requirements agreed to by both BANA and Old Republic, and

that BANA represented each of its loans met.   In the wake of the housing meltdown, BANA submitted thousands of claims under the policy for defaulted loans, many involving borrowers who failed to meet the agreed-upon eligibility requirements of the policy.  Old Republic refused to pay those claims, and BANA filed suit for, *inter alia*, breach of contract and bad-faith denial of coverage.

Based on the nature of the underlying policy, there is no substitute for evaluating each of the over 4,400 separate disputed claims and loans that BANA included in its suit.  The policy covers only eligible loans.  Accordingly, when a claim is submitted, Old Republic makes an individualized determination whether the loan meets the eligibility requirements for coverage.   Based on such determinations, Old Republic has paid over $90 million in claims under the policy, and believes it is justified in refusing to pay the claims at issue.  But a factfinder could find a breach of contract as to some loans, a bad faith denial as to others, and neither as to many more.  Faced with the prospects of actually trying so many disputed loans, the district court proceeded to issue a series of orders—all proposed by BANA and entered nearly *verbatim* by the district court—designed to ram through the literally thousands of claims.  The culmination of this assembly-line justice was the case management order, which contemplates a series of trials beginning October 2014 where one jury would determine whether Old Republic improperly denied coverage for thousands of claims until the policy limits are

2

exhausted; and then a second set of proceedings before a second jury which would decide whether Old Republic's denials of coverage for the exact same loans were in bad faith. That cannot be done while respecting the Seventh Amendment.

The district court's plan may be the quickest way to process thousands of claims, but "'the fact that a given … procedure is efficient, convenient, and useful … will not save it if it is contrary to the Constitution.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2619 (2011) (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)). Specifically, the Seventh Amendment does not allow a second jury to reexamine overlapping factual issues previously evaluated by an exhausted and discharged first jury. The Supreme Court and the federal courts of appeals have long held that the Seventh Amendment's bar against reexamination of jury-found facts prohibits a second jury from reconsidering issues not clearly distinct and separable from issues already considered by a first jury, as is true of the issues in coverage and bad-faith claims. And they have likewise held that mandamus is the proper remedy for pre-trial Seventh Amendment violations like those here. The fact that Old Republic's Seventh Amendment rights will be violated a thousand-fold makes mandamus relief not just appropriate but imperative.

## ISSUE PRESENTED

Whether a case management order providing for multiple trials before one jury of thousands of loan-specific claims for coverage under an insurance policy,

and then a subsequent trial before a different jury of thousands of claims for bad-faith denial of coverage for the same loans under the same policy, violates the Seventh Amendment.

## JURISDICTION

This Court may issue a writ of mandamus pursuant to 28 U.S.C. § 1651. Typically, there are "two conditions that must be satisfied as a predicate to mandamus jurisdiction." *United States v. Moussaoui*, 333 F.3d 509, 517 (4th Cir. 2003). First, "the party seeking issuance of the writ must have no other adequate means to attain the relief he desires," and second, "the petitioner bears the burden of showing that his right to issuance of the writ is clear and indisputable." *Id.*

It is well-established, however, that mandamus jurisdiction is proper when a petition alleges a Seventh Amendment violation, even if the Seventh Amendment violation is not beyond dispute. Preventing Seventh Amendment violations is a traditional office of the writ. *See In re Lockheed Martin Corp.*, 503 F.3d 351, 353 (4th Cir. 2007) (observing that "[i]n this circuit, a petition for a writ of mandamus is the proper way to challenge the denial of a jury trial"); *accord Gen. Tire & Rubber Co. v. Watkins,* 331 F.2d 192, 194 (4th Cir. 1964); *see also, e.g.*, *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 511 (1959); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303-04 (7th Cir. 1995); *In re Vorpahl,* 695 F.2d 318, 319 (8th Cir. 1982) . And when the

Seventh Amendment is at issue, "strict compliance with the stringent conditions on the availability of the writ … is excused." *Rhone-Poulenc*, 51 F.3d at 1303. "As compared to the common insistence that there be a clear and indisputable right to writ relief," therefore, "the right to jury trial may be protected even though the law surrounding the jury trial question may be difficult or uncertain." 16 Wright & Miller, Federal Practice and Procedure § 3935.1 (3d ed. 2014); *see also Wilmington Trust v. U.S. Dist. Ct. for the Dist. of Haw.*, 934 F.2d 1026, 1028 (9th Cir. 1991); *Filmon Process Corp. v. Sirica*, 379 F.2d 449, 450-51 (D.C. Cir. 1967).[1]

## STATEMENT OF FACTS

### A.    BANA's Complaint and the Bellwether Trial Plan

This case arises out of a credit insurance policy issued by Old Republic (the "Policy") providing coverage for losses due to payment default on qualified second-lien home equity loans originated by BANA in the years 2002-2007. App. 39. The Policy does not identify specific loans subject to coverage; instead, it provides coverage for "Eligible Notes" that comply with underwriting requirements contained in "Sanctioned Guidelines" and various term sheets elaborating on those guidelines. App. 162, 165. The Sanctioned Guidelines are

---

[1] Old Republic has not sought permission to appeal the case management order under 28 U.S.C. § 1292(b) because the Seventh Amendment issues—which go to how a case will be tried, rather than offering a legal objection that would obviate a trial—do not readily satisfy the § 1292(b) criteria, which is part of the reason they are traditionally handled via mandamus.

objective credit criteria and underwriting and documentation procedures that derive from BANA's own internal underwriting guidelines, were suggested and drafted by BANA, and were agreed to by Old Republic.  Over the course of the Policy, BANA and Old Republic would periodically agree on modifications to these terms and conditions governing the classes of loans eligible for coverage.  Through this collaborative effort, Old Republic—like any rational insurer—did not agree simply to insure whatever loans BANA decided to approve.  Rather, it agreed to insure losses only from loans complying with particularized and specifically-negotiated credit criteria, and it retained the ability to confirm that each of BANA's loans met these criteria and to assess coverage as part of its claims handling practice.

As is by now well-known, BANA's loan origination practices in the years preceding the housing crisis were, to say the least, questionable.  Nevertheless, following payment default on thousands of dubious loans it underwrote, BANA sought coverage under the Policy from Old Republic, which, while allowing $90 million in claims, refused many others based on the ineligibility of those loans under the Sanctioned Guidelines and other policy terms.  On November 3, 2010, BANA filed suit in the district court alleging Old Republic had failed to pay BANA hundreds of millions of dollars in claims.  App. 37-38.  BANA sought, *inter alia*, declaratory relief, actual damages for breach of contract, and punitive damages for bad faith denial of coverage.  App. 51, 54.

6

Discovery revealed that BANA's claims implicate over 4,400 separate loans. BANA's Mot. for Bellwether Trial Plan 1 (Dec. 22, 2011) (Dkt. 52). Trying both breach and bad faith for each of those 4,400 separate loans was a daunting prospect. Accordingly, in December 2011, BANA requested that the district court adopt a bellwether trial plan. In its motion, BANA stated that "[t]he issues presented by this action are complex" and "the more than 4,400 claims at issue in this case are not identical and would require resolution based on the specific facts of each claim." *Id.* at 1-2. BANA contended that because Old Republic's "rationales for denying [BANA's] claims can be generally grouped into distinct categories," the case "lends itself to a trial structure where particular theories for claim denials can be tried through a few exemplary claims." *Id.* at 2-3. Old Republic opposed BANA's motion on the ground that it was premature, arguing that a bellwether trial structure should wait until further discovery was completed and key issues could more appropriately be identified. *See* Def.'s Br. in Opp. to Bank of America's Bellwether Trial Plan 1-2 (Jan. 10, 2012) (Dkt. 61).[2]

In a hearing on BANA's request, Judge Mullen observed that there was "no way I can try 4,000 cases." App. 187. He charged the parties with devising a "plan for basically accomplishing what Bank of America has proposed" and

---

[2] Concurrently, Old Republic filed a counterclaim alleging that BANA had interfered with Old Republic's subrogation rights under the Policy. *See* App. 172-181.

suggested "50 [claims] as an outside number" to serve as bellwethers. App. 186.

As such, Old Republic submitted a bellwether trial plan covering 50 representative

claims. BANA, by contrast, proposed proceedings covering only 24 claims, which

Old Republic believed would be insufficient to cover the number and variety of

loans and issues and thus not actually streamline the litigation. *See* Statement of

BANA Re Proposed Scope, Procedure, and Schedule for Anticipated Bellwether

Proceeding 4 (June 15, 2012) (Dkt. 97); Def. Old Republic Ins. Co.'s Report &

Proposals Regarding the Bellwether Proceeding 2-3 (June 15, 2012) (Dkt. 98).

In June 2012, the court adopted BANA's bellwether plan almost *verbatim*.

App. 188-190. The plan provided that the parties would try 24 claims covering

(1) denials based on Old Republic's underwriting analysis; (2) denials based on

alleged missing documents; (3) denials based on non-conformity with underwriting

guidelines; (4) denials for appraisal variances; and (5) denials for late-filed claims.

The plan also provided that the district court would hear and resolve legal issues in

connection with the bellwether process, and those determinations would control

later phases of the bellwether proceeding. App. 189-190.

## B.    Summary Judgment Proceedings and the "Administrative Orders"

In March 2013, BANA filed five motions seeking partial summary judgment

that (1) the Policy consists solely of the Policy form and endorsements; (2) Old

Republic cannot deny coverage based on information unknown to BANA at the

8

time of loan origination; (3) Old Republic cannot deny coverage because BANA's origination appraisal overstated a property's market value; (4) Old Republic cannot deny coverage because BANA submitted a claim after the Policy-prescribed 180-day time period or failed to provide supporting documentation; and (5) BANA's suit is not barred by the Policy's one-year limitations period.  Old Republic opposed each motion.  *See* Dkt. 193, 199, 201, 208, 210, 218, 219, 220, 221.

The district court held a hearing on the motions and granted all five from the bench.  For each determination, the court provided at most two or three sentences of reasoning, with many orders completely unexplained.  *See* Tr. of Mot. Hr'g 14-15, 38-39, 67-68, 142 (Aug. 22, 2013) (Dkt. 269).  The next day, the court issued a written order granting the motions that provided no further reasoning, referring only to "the reasons stated in open court."  App. 191.

Shortly thereafter, but several months before the planned November 2013 bellwether trial, the parties settled the remaining bellwether claims, with Old Republic agreeing to pay BANA the full amount of each of the remaining bellwether claims net of any returned premium that BANA owed Old Republic. (BANA had previously withdrawn three bellwether claims, and Old Republic had paid four.)  *See* Stipulation Regarding Bellwether Claims 1-2 (Sept. 19, 2013) (Dkt. 309).  Despite the settlement, BANA sought to preserve the favorable (but unexplained) orders and sought permission to file motions "resolv[ing] certain

evidentiary and legal issues" that would have arisen in the bellwether trial, which would "help[] the parties to get through the remaining loans." App. 197. The court permitted BANA counsel to file the motions, stating: "I don't know what you want to call it. … Call it a motion for administrative relief in which you lay out what you're wanting to be done when." App. 198. The court gave BANA eight days to file its motions and Old Republic only five days to respond. App. 198-199.

BANA then filed four "motions for administrative relief." The first motion sought an order that Old Republic (a) could not deny coverage based on borrower misrepresentations that were unknown to BANA's underwriters at the time of loan origination, and (b) could not use extrinsic evidence, industry custom, or course of dealing in its arguments concerning Policy construction, even though that evidence, custom, and practice is critical to understanding that an insurance policy in which BANA has superior information as to the loans it—and not Old Republic—has underwritten is anything other than a suicide pact for the insurer. The second sought an order that Old Republic could not, during litigation, deny coverage for any reason not set forth in initial correspondence to BANA at the time it denied a claim. The third sought an order that Old Republic could not offset its claim payments to BANA by deducting amounts Old Republic was owed on other loans where the insurer paid claims. The fourth sought to bar Old Republic from introducing certain documents revealing material irregularities in BANA's loan

origination process. *See* BANA's Overview of Its Mots. for Administrative Relief 3 (Sept. 13, 2013) (Dkt. 275); *see also* Dkt. 276, 278, 282, 287 (motions).

Old Republic opposed each motion as both procedurally improper and flawed on the merits. Among other things, Old Republic noted that because the bellwether claims had been withdrawn or settled, BANA sought only advisory relief unconnected to any claim due to be tried. Old Republic also argued that BANA's purportedly "administrative" motions sought substantive legal relief that could only be requested (and granted) pursuant to Federal Rule of Civil Procedure 56, governing summary judgment—and, in the case of BANA's motion to bar Old Republic's offsets, sought injunctive relief entirely unconnected to the BANA's claims. *See, e.g.*, Old Republic Ins. Co.'s Resp. to BANA's Overview of Its Mots. for Administrative Relief 3-5 (Sept. 18, 2013) (Dkt. 298); *see also* Dkt. 299, 300, 303, 304 (responses to motions for administrative relief).

The district court held a hearing on BANA's "administrative" motions, and granted BANA all it sought, while postponing consideration of the last motion until "closer to trial." Tr. of Mot. Hr'g 54 (Feb. 4, 2014) (Dkt. 337).[3] As before, the district court provided no reasoning for any of its holdings. *Id.* at 33, 53-54, 58. Instead, it asked BANA counsel to "prepare something" for the court. *Id.* at 33,

---

[3] During this hearing, the district court also denied Old Republic's request to amend its counterclaim. Tr. of Mot. Hr'g 86-87.

53-54.  BANA counsel obliged by preparing lengthy opinions that went well beyond the court's request and contained assertions and reasoning the court never articulated.  *See* Old Republic Ins. Co.'s Objections to Proposed Orders Submitted by BANA on February 21, 2014 (Feb. 23, 2014) (Dkt. 340).

The district court nevertheless adopted BANA's proposed opinions and orders almost *verbatim*.  *See* App. 200-214.  BANA did not provide a proposed order regarding its motion to prohibit Old Republic's offsets, so the court entered its own terse order granting the motion "[f]or the reasons stated in open court"—although the court had given no reasons during the hearing.  App. 215; Tr. of Mot. Hr'g 58.  Old Republic has appealed that injunctive order.  *See Old Republic Ins. Co. v. Bank of America, N.A.*, No. 14-1352 (4th Cir.).

### C.    The Case Management Order

In February 2014, the parties submitted proposed case management orders governing the rest of proceedings.  Old Republic proposed a bellwether process involving 26 claims that was substantially similar to what BANA had previously proposed and the district court had previously accepted.  *See* Def. Old Republic Ins. Co.'s Case Management [Proposed] Order 2 (Feb. 24, 2014) (Dkt. 343).

By contrast, BANA abandoned the bellwether approach and proposed an assembly-line process under which the coverage question of each of the 4,400-odd loans would be tried seriatim until sufficient denials are overturned to "exhaust the

policy limits." BANA's Statement in Supp. of Its Proposed Case Management Order 1-2 (Feb. 24, 2014) (Dkt. 341).[4] This en masse proceeding could be accomplished, BANA explained, because the prior rulings it procured eliminated many of the issues normally disputed in coverage disputes such that it would now be possible to "try a large number of loans falling within discrete categories that are already subjected to prior rulings of this Court." *Id.* at 3. Indeed, the prior rulings had so skewed the process that BANA did not have to contemplate the possibility of Old Republic prevailing with respect to a material number of loans. Instead, it could confidently predict that its proposal "would resolve hundreds of loans/claims" at a time, resulting in the inevitable exhaustion of the policy limits. *Id.* at 4. And once the inevitable came to pass and the policy limits were exhausted, BANA proposed a separate trial (or trials) before a separate jury on BANA's bad faith claims, which are independent of the policy limits. *See* BANA's Proposed Case Management Order 4 (Feb. 24, 2014) (Dkt. 341-1).

Old Republic objected to this extraordinary proposal. It argued that BANA's unorthodox assembly-line plan unfairly prejudiced Old Republic's ability to

---

[4] The Policy establishes Old Republic's maximum cumulative liability for loss due to borrower default on the insured loans made by BANA in each policy year. As of December 15, 2013, the sum of Old Republic's remaining liability limits for all Policy years combined is approximately $112 million. *See* Def. Old Republic Ins. Co.'s Objections to BANA's Proposed Case Management Order and Statement in Supp. of Its Proposed Case Management Order 4 (Feb. 24, 2014) (Dkt. 345).

present evidence regarding all issues arising out of each of the thousands of loans, would overwhelm a jury required to decide numerous factual issues, and, by conducting the coverage and bad faith trials before different juries, violated Old Republic's Seventh Amendment rights. *See* Def. Old Republic Ins. Co.'s Objections to BANA's Proposed Case Management Order and Statement in Supp. of Its Proposed Case Management Order (Feb. 24, 2014) (Dkt. 345). In response, BANA acknowledged that its proposed trial plan contemplated the use of two different juries for the coverage and bad faith trials and that the Seventh Amendment is violated if "the second jury retries issues determined by the first jury," but it argued that bifurcation of coverage and bad faith claims is "common" in insurance cases. BANA's Resp. to Objections to Proposed Case Management Order 6 (Feb. 26, 2014) (Dkt. 348).

Once again, the district court granted BANA's requested relief and entered BANA's proposed case management order almost *verbatim*. The court's order of March 14, 2014, provides in pertinent part:

- "[T]he parties shall attempt to try a sufficient amount of loans/claims that, if paid, will exhaust the policy limits for the Later Policy Years [2005-2007] and resolve a significant portion of the dispute with respect to loans/claims under the Early Policy Years [2002-2004]."

- "[T]he parties shall try loans/claims falling with the following denial categories or 'buckets': (1) Misrepresentation of Income/Employment; (2) Appraisal; (3) Late Claim Filing; (4) Missing Documentation; (5) Guideline Violations (non-misrepresentation)."

14

- "Bank of America shall provide to Old Republic a list of loans/claims falling with the aforementioned 'buckets,' and meeting the exhausting requirements as explained above. These loans/claims shall be the basis for the trial on Bank of America's claims for coverage."

- "If, at the conclusion of the trial, policy limits are not exhausted, a second trial on the coverage issue shall proceed in an attempt to exhaust the policy limits."

- "[A]ny issues of a legal nature (e.g., interpretations of provisions of the insurance policy) shall be binding on this phase of the proceedings. This includes all rulings on prior summary judgment motions and motions for administrative relief."

- "Bank of America's bad faith claim shall be tried after trial on the coverage issue. The Court will set a trial date to begin 120 days of the conclusion of all trials on the coverage issue."

App. 216-218.   The court did not address, much less respond to, any of Old Republic's objections, including its Seventh Amendment objection.   It permitted BANA time to supplement its list of over 4,400 disputed loans, and it set a trial date of October 20, 2014.   App. 216, 219.

On April 10, 2014, Old Republic noticed an appeal of the district court's "administrative" order enjoining it from offsetting claim payments to BANA on loans unrelated to this litigation.   *See* Notice of Appeal (Apr. 10, 2014) (Dkt. 357).   On May 5, Old Republic filed this petition for a writ of mandamus.

## REASONS FOR ISSUING THE WRIT

## I.    The District Court's Trial Plan Violates The Seventh Amendment.

The case management order violates the Seventh Amendment by having a second jury reexamine facts and issues decided by a first jury.   Indeed, the order

will violate Old Republic's Seventh Amendment rights a thousand times over by having one jury consider whether there was a coverage obligation on thousands of individual loans and then having a second jury consider whether the denial of coverage for the exact same loans was in bad faith. The second jury cannot discharge that function without reexamining facts found by the first jury or violating the Seventh Amendment.

The Supreme Court and the federal courts of appeals have made clear that the consideration by different juries of issues not clearly separable from one another violates the constitutional guarantee against reexamination of facts tried by a jury. Under the case management order here, in determining Old Republic's liability on BANA's coverage claim, an initial jury (or juries) will consider whether Old Republic was required to cover each of thousands of separate claims for separate loans under the Policy. Subsequently, in determining Old Republic's liability on BANA's bad-faith claim, a second jury (or juries) will consider whether each of those claims for each of those same loans was denied in bad faith. There is no way for the second jury to do so without replowing factual ground in a manner forbidden by the Seventh Amendment. The case management order is the *ne plus ultra* of the district court's systematic effort to make BANA's claim triable at the expense of Old Republic's legal rights. Because the order is plainly incompatible with the Seventh Amendment, mandamus is appropriate.

16

## A.    The Seventh Amendment Bars Reexamination of the Same Issue by Different Juries.

The Seventh Amendment to the Constitution provides in relevant part that "[i]n Suits at common law … no fact tried by a jury, shall be otherwise reexamined in any Court of the United States."  U.S. Const. amend. VII.  This "reexamination" clause "entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996).   The Supreme Court recognized this principle in *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931). There, it held that the Seventh Amendment prohibited a second jury from trying an issue already tried by a first jury "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."  *Id.* at 500.  A Seventh Amendment violation would be avoided only if the issue considered by the second jury was "clearly separable" and "distinct and independent" from the issue considered by the first jury, *id.* at 499, and consideration of the issue by the second jury would not cause "confusion and uncertainty, which would amount to a denial of a fair trial," *id.* at 500.

While *Gasoline Products* arose in the retrial context, the courts of appeals have applied its reasoning when a district court's case management order contemplates multiple juries trying a single case.  In *Rhone-Poulenc*, the Seventh Circuit issued a writ of mandamus in light of the "looming infringement of Seventh

17

Amendment rights" occasioned by a district court's plan to divide among multiple juries issues in a class-action suit alleging negligence in the screening of HIV-tainted blood. 51 F.3d at 1304. The court acknowledged that "[b]ifurcation and even finer divisions of lawsuits into separate trials are authorized in federal district courts," and a decision to employ the procedure is entitled to deference. *Id.* at 1302 (citing Fed. R. Civ. P. 42(b)). Nevertheless, "the judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries." *Id.* at 1303. The court explained, "The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them … and not reexamined by another finder of fact," whether that "finder of fact" is a judge or another jury. *Id.* (citing *Gasoline Products*). The court accordingly rejected a trial plan under which a second jury would have considered an issue that "overlap[ped]" with an issue considered by a first jury. *Id.*[5]

The Fifth Circuit has held likewise in a series of cases. In *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978), the court recognized a "limitation on the use of bifurcation" stemming from the Seventh Amendment "right of a litigant to have only one jury pass on a common issue of fact." *Id.* at 318 (citing *Gasoline*

---

[5] Federal Rule of Civil Procedure 42(b) permits bifurcation but provides that a court ordering a separate trial "must preserve any federal right to a jury trial."

*Products*).  The court accordingly held that an issue to be tried by a second jury "must be so distinct and separable from the others that a trial of it alone may be had without injustice."  *Id.*  In a later case, the Fifth Circuit similarly observed that the Constitution only allows bifurcation of issues "so separable that the second jury will not be called upon to reconsider findings of fact by the first."  *Castano*, 84 F.3d at 750.  And in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), the court held that an order in a Title VII case bifurcating a disparate-impact claim from a pattern-or-practice claim, with each to be heard by a different jury, violated the Seventh Amendment.  Among other things, the two claims "share[d] factual issues," including that "an essential factual element of both claims is a finding that the challenged employment practice caused each individual class member to suffer an adverse employment action."  *Id.* at 424; *see also id.* at 425 n.23 (noting that "[t]he same policies and practices are challenged under both claims").

Other courts of appeals are in accord.  The Second Circuit has held that "issues may be divided and tried separately, but a given issue may not be tried by different, successive juries."  *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999).  And it found a "clear[]" Seventh Amendment violation after concluding that successive juries had been asked to consider the same "given issue."  *Id.* at 268-69; *see also Olden v. LaFarge Corp.*, 383 F.3d 495, 509 n.6 (6th Cir. 2004) (citing *Rhone-Poulenc* in observing that bifurcation "may deprive [a party] of its Seventh

Amendment right to a jury trial" (quotation marks omitted)); *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997); *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961); 9A Wright & Miller, Federal Practice and Procedure § 2391 (3d ed. 2014) ("[S]eparate trial of a particular issue cannot be ordered … when the issue is so interwoven with the other issues in the case that it cannot be submitted to the jury independently of the others without confusion and uncertainty that would amount to a denial of a fair trial."); *id.* § 1801 ("[F]ailure" to "bifurcat[e] [a] trial to avoid the possibility that a second jury will be reexamining the facts found by the first jury" will "create a constitutional defect[.]").

> **B.    The District Court's Trial Plan Contemplates Examination of the Same Coverage Issues by Different Juries, Violating the Seventh Amendment.**

The district court's case management order clearly violates the Seventh Amendment.  The case management order contemplates a remarkable series of separate trials with separate juries considering (and reconsidering) overlapping factual issues en masse.  In the first trial, a jury will consider thousands of coverage claims under truncated proceedings designed to exhaust the coverage limits under BANA's policies.  If the first effort to exhaust the coverage limits does not succeed, the court will conduct a second trial on coverage claims—and so on until BANA exhausts the policy limits.  Then, months later, the court will convene a new jury to try BANA's bad faith claims involving the exact same loans and

claims.  Because the first element of a bad faith claim requires the jury to decide whether Old Republic recognized but refused a valid claim, the new jury will necessarily reconsider factual issues already determined by the earlier jury (or juries) from the coverage phase.  This is a plain violation of *Gasoline Products* made all the more egregious in that it will be reiterated for thousands of claims and loans.  As the courts have long recognized, mandamus is the proper remedy for this constitutional violation.

It is common ground that the district court's case management order would have different juries separately try coverage and bad faith.  When Old Republic objected to BANA's proposed trial plan, BANA did not suggest that a single jury could be forced to try thousands of breach claims, be held without discharge for months, and then be forced to replow the same ground under the bad faith rubric. Instead, BANA acknowledged that "[t]he *second* jury would only examine whether Old Republic is liable for bad faith," but claimed that no reconsideration would be necessary.  BANA's Resp. to Objections to Proposed Case Management Order 6 (emphasis added).

Trying the claims separately would inevitably require the second jury to reevaluate the circumstances surrounding Old Republic's decision to deny a claim, and thus the Seventh Amendment problem cannot be simply wished away.  The standard is whether BANA's bad faith claims are not so "clearly … distinct and

21

separable from" its coverage claims "that a trial of [them] alone may be had without injustice." *Gasoline Prods.*, 283 U.S. at 500. To state a bad faith claim under North Carolina law, BANA will be required to prove "(1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct (for punitive damages)." *Cleveland Const., Inc. v. Fireman's Fund Ins. Co.*, 819 F. Supp. 2d 477, 483 (W.D.N.C. 2011) (citing *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. Ct. App. 1993)).[6] The first element of the bad faith claim will necessarily retread the issue in the case management order's initial trial phase: whether Old Republic was obligated to pay BANA's claims. Thus, the second jury will unavoidably be called upon to reconsider facts already considered and resolved by the first jury, based on much of the same evidence along with additional evidence on good faith that the district court has excluded from the coverage trial.

In similar instances of unavoidable overlap, the courts have not hesitated to order that claims be tried together. For instance, in *Rhone-Poulenc*, the Seventh Circuit ordered mandamus relief to prohibit the separation of one jury's negligence determination from later juries' consideration of comparative negligence and proximate causation because the latter "issues overlap the issue of the defendants' negligence." 51 F.3d at 1303. The Seventh Circuit emphasized the potential for

---

[6] All agree North Carolina law applies here. *See, e.g.*, App. 203, 205-208.

"inconsistency between juries" where one jury is called on to determine negligence, on the one hand, and later juries must weigh each parties' relative negligence and determine whether a plaintiff's injury resulted from the defendant's negligent conduct, on the other hand. *Id.*

In *Castano*, the Fifth Circuit relied on *Rhone-Poulenc* and concluded that "[s]evering a defendant's conduct from comparative negligence" would violate the Seventh Amendment because, in deciding an issue central to the latter, there was a risk that the second jury "could reevaluate" the first jury's findings regarding the former. 84 F.3d at 751. Likewise, in *Allison*, the Fifth Circuit found a Seventh Amendment violation where separate juries would hear different claims that "share[d] … factual issues." 151 F.3d at 424. So too here, where an "essential factual element of both [the coverage and bad faith] claims," *id.*, is a finding that Old Republic was obligated to pay BANA's claims. To guard against inconsistent judgments, the Seventh Amendment squarely prohibits multiple juries from considering these "questions of fact common to the plaintiffs' … claims." *Id.* at 424-25 (citations omitted).[7]

---

[7] Furthermore, in *Rhone-Poulenc* and *Castano*, as here, the underlying reason for deferring closely intertwined issues was to permit a first proceeding—there a class action, here streamlined en masse trials—that was designed to force a settlement so that the second phase never occurs. Here, as in *Rhone-Poulenc*, the enormous settlement pressures created by the district court's unorthodox approach weigh in favor of mandamus relief.

Separating these issues, moreover, will certainly cause juror "confusion and uncertainty" sufficient to state a Seventh Amendment injury. *Gasoline Prods.*, 283 U.S. at 500; *see, e.g.*, 9A Wright & Miller, *supra*, § 2391. The "bad faith" jury will be asked to consider, as an element of BANA's claims, whether there has been "a refusal to pay after recognition of a valid claim." *See Cleveland Const.*, 819 F. Supp. 2d at 483. This element not only necessarily involves some inquiry into whether there was "a valid claim"—*i.e.*, the question in BANA's coverage claims—but also ultimately requires the jury to find that Old Republic "had determined that the claim was valid and that [it] nevertheless refused to pay," which is a closely related and overlapping factual question. *Michael v. Metro. Life Ins. Co.*, 631 F. Supp. 451, 455 (W.D.N.C. 1986); *accord Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 636 (W.D.N.C. 2006) ("Plaintiffs have offered no evidence to establish that Hartford determined Blis's claims were valid or that any refusal by Hartford to pay disputed claims was not due to honest disagreement."). Navigating the line between what was resolved in the coverage phase and what factual questions remain for the bad faith phase—particularly after the resolution of over four thousand loans or over $100 million dollars in remaining policy limits, whichever comes first—will, at a bare minimum, confuse the jury in ways that will vitiate Old Republic's Seventh Amendment rights.

24

Thus, the district court cannot simply instruct the second jury "that coverage on the loans has already been determined and is not to be re-examined," as BANA blithely suggested below.   BANA's Resp. to Objections to Proposed Case Management Order 6.  The second jury's factual determination on the first element of BANA's bad faith claim is not strictly limited to coverage *vel non*, but instead encompasses whether and when *Old Republic* "determined" there was coverage and decided not to pay anyway.  The jury will necessarily be required to review much of the same evidence—plus additional evidence on good faith coverage disputes that has been excluded from the first trial—to answer intertwined but legally distinct questions.  This is no different from the problematic overlap and potential for confusion with the negligence issues in *Rhone-Poulenc* and *Castano*, where the subsequent factual questions were similar but not symmetrical.   In neither case would BANA's proposed instruction have been sufficient—which is why both courts insisted that the issues be tried together.  The same is true here.

Moreover, BANA's contention that "it is common in insurance cases for the coverage and bad faith causes of action to be bifurcated," BANA's Resp. to Objections to Proposed Case Management Order 6, is both misleading and nonresponsive to the Seventh Amendment violation here.  In the insurance cases BANA cited for that proposition, a Seventh Amendment violation could not possibly have occurred either because the same jury tried both claims, *see Brantley*

*v. Safeco Ins. Co. of Am.*, 2011 WL 6012554 (W.D. Ky. Dec. 1, 2011), or the case was not tried to a jury in the first place, *see O'Malley v. U.S. Fidelity and Guar. Co.*, 776 F.2d 494, 496, 501 (5th Cir. 1985) (per curiam).  BANA's citation to *CSX Transportation, Inc. v. Gilkison*, 2012 WL 3283411 (N.D. W. Va. Aug. 10, 2012), furthermore, is confounding.  That case did not concern insurance coverage and bad faith claims, or even the Seventh Amendment, at all, and the court—citing *Gasoline Products—denied* the motion for separate trials while noting that "[t]he overlap between the claims … is a factor that balances against ordering separate trials."  *Id.* at *7.  In *dicta*, the *CSX* court did suggest that coverage and bad faith claims "lend themselves to bifurcation," but the two cases it passingly cited for that unremarkable observation do not remotely suggest that the circumstances here raise no Seventh Amendment issues.  One case, *Brantley*, is easily distinguishable, as just noted.  And in the other, the "decision to bifurcate the trial was based on a joint motion of the parties," which is far from the case here.  *Id.* at *6 (discussing *Ferrell v. Brooks*, 2006 WL 1867267 (N.D. W. Va. June 30, 2006)).

Thus, while it might be true that courts sometimes separate coverage and bad faith within constitutional limits, it is *not* true that courts routinely ignore the Seventh Amendment to try coverage and bad faith to separate juries, as here. Mandamus is the proper remedy in these circumstances.  *See* pp. 4-5, *supra*.  This is true both where the right to a jury *simpliciter* is at issue and where the Seventh

26

Amendment's reexamination clause would be violated.  *See, e.g.*, *Rhone-Poulenc*, 51 F.3d at 1303-04.

### C.    The Case Management Order Is the Culmination of Multiple Orders that Sacrifice Old Republic's Rights.

Courts correct Seventh Amendment violations on mandamus even when the violation implicates only a single claim.  *See, e.g.*, *Lockheed Martin*, 503 F.3d at 352-53.  But here Old Republic's Seventh Amendment rights will be violated a thousand times over as the second jury reconsiders thousands of claims and thousands of underlying loans.  And the Seventh Amendment violation in the case management order is just the culmination of the district court's effort to make BANA's thousands of claims triable at the expense of Old Republic's legal rights.

Everything about this case is extraordinary.  BANA is the one that underwrote these bad loans, and BANA is being held accountable elsewhere for its malfeasance, misfeasance, and nonfeasance in that process.  Yet here BANA has gone on the offensive and tried to shift the financial consequences of its poor underwriting to Old Republic.  To be sure, Old Republic issued insurance in conjunction with these loans, but it did not simply agree to pay BANA if BANA issued bad loans based on information available to BANA and not Old Republic.  Rather, it rationally agreed to cover only those loans evidenced by notes meeting eligibility criteria agreed upon by BANA and Old Republic.  But that means that any coverage disputes require a fact-specific inquiry.  Thus, when BANA sued on

27

over 4,400 loans at once, it created a management challenge for the district court. That was no cause, however, for the trial court to make this case manageable at the expense of Old Republic's substantive and procedural rights. Yet that is exactly what happened, with the case management order just the *ne plus ultra*.

The district court's unconstitutional separation of the overlapping claims is endemic of its assembly-line approach to resolving this case. Rather than try coverage and good faith together in a manageable trial of bellwether claims, the district court adopted BANA's proposal to ram through literally thousands of coverage claims over multiple trials until BANA exhausts the Policy's limits— which both BANA and the court presume to be inevitable—before turning to an overlapping set of bad faith claims to be tried to, and similarly rushed through, a new jury. This is not how justice is done.

The faulty case management order, moreover, is the culmination of a fast-tracked series of motions for so-called "administrative" relief that, in reality, granted summary judgment to BANA on a series of critical legal issues without the proper burdens of proof, standards of review, or procedures required by the federal rules. *See, e.g.*, App. 200-209 ("administrative" order holding, as a matter of law, that the Policy is a fully integrated contract, and excluding any other evidence bearing on Policy interpretation ). Indeed, in a related appeal, Old Republic is currently challenging the "administrative" order entered by the district court

28

preliminarily enjoining—without any consideration, let alone analysis of, the four traditional factors for preliminary injunctive relief—Old Republic from engaging in conduct that BANA has *conceded* is unrelated to its claims in this case. *See Old Republic Ins. Co. v. Bank of America, N.A.*, No. 14-1352 (4th Cir.); App. 215. Like the first bellwether plan and the case management order, moreover, these "administrative" orders were adopted virtually *verbatim* from BANA's requests for relief, after accelerated briefing periods and an omnibus hearing during and after which the court provided almost no reasoning for its decisions (except for those provided by BANA, which the district court also adopted nearly *verbatim*). The district court's all-too-eager departure from the rules of civil procedure in order to fast-track what BANA itself has acknowledged are "complex" claims that "require resolution based on the specific facts of each claim," BANA's Mot. for Bellwether Trial Plan 1-2, is clear error and highly prejudicial to Old Republic.

In short, the denial of Old Republic's Seventh Amendment rights is not an isolated aberration but the end result of a series of procedural and substantive errors. In fact, one of those errors—the district court's "administrative" order barring extrinsic evidence bearing on the Policy—exacerbates the Seventh Amendment error. Under that order, Old Republic is prohibited from introducing any evidence beyond the four corners of the Policy during the coverage phase of trial, including Policy guidelines agreed to by the parties, industry custom, and the

actual course of dealing between the parties. Old Republic maintains that this evidence is critical to the coverage questions in the first trial, but in all events this evidence will obviously influence the jury's consideration of whether and when Old Republic "determined" there was coverage, a necessary factual determination in the second trial. By creating a situation in which the two different juries will consider different evidence to resolve overlapping factual issues, the district court only *increased* the risk of confusion and inconsistent factual judgments, underscoring the Seventh Amendment violation. If the same jury considers both questions together, the exclusion of this evidence would still be incorrect, but at least the jury could draw the distinction between claims for itself.

*    *    *

The district court's assembly-line justice violates Old Republic's Seventh Amendment rights and exacerbates the injustice and confusion caused by the district court's previous rulings. These are not mere procedural quibbles; they underlie the Constitution's guarantee of a fair trial. Unless this Court intervenes, Old Republic's constitutional rights will be denied. Mandamus is required.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus directing the district court to rescind the current case management order and to implement a trial plan consistent with the Seventh Amendment.

30

Respectfully submitted,

s/Paul D. Clement

| | |
|---|---|
| Michael R. Hassan | Paul D. Clement |
| Albert E. Fowerbaugh, Jr. | George W. Hicks, Jr. |
| Catherine E. Isely | Michael H. McGinley |
| Butler Rubin | Bancroft PLLC |
|   Saltarelli & Boyd LLP | 1919 M Street NW |
| 70 W. Madison Street | Suite 470 |
| Suite 1800 | Washington, DC 20036 |
| Chicago, IL 60602 | (202) 234-0090 |
| (312) 444-9660 | pclement@bancroftpllc.com |

*Counsel for Petitioner Old Republic Insurance Company*

May 5, 2014

31

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2014, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system, and I caused one original and three copies of the foregoing to be sent to the Clerk of Court via Federal Express.

I further certify that the foregoing was served by electronic mail and Federal Express upon the following counsel for Respondent Bank of America, N.A:

B. MICHAEL BARNHILL
WOMBLE CARLYLE
  SANDRIDGE & RICE, PLLC
One Wells Fargo Center
Suite 3500
301 South College Street
Charlotte, NC 28202
704-331-4900
mbarnhill@wcsr.com

DAVID M. HALBREICH
REED SMITH LLP
355 South Grand Ave., Suite 2900
Los Angeles, CA 90071
213-457-8000
dhalbriech@reedsmith.com

                                        s/GEORGE W. HICKS, JR.
                                        GEORGE W. HICKS, JR.